IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BRENDA BAKER,  :
 :
    Plaintiff,  :
 :
v.  :    No. 3:10-CV-62 (CAR)
 :
GENERAL ELECTRIC CAPITAL,  :
CORP., d/b/a GEMB a/k/a GE  :
CONSUMER FINANCE,  :
 :
    Defendant.  :
_____

**ORDER ON DEFENDANT'S MOTION TO DISMISS COUNT II**

This matter comes before the Court on Defendant General Electric Capital Corp.'s ("GEMB") Motion to Dismiss Count II of Plaintiff's Complaint. [Doc. 5]. In its motion, Defendant contends that Count II of the Complaint, which is based on state tort law, is preempted by a provision of the Fair Credit Reporting Act ("FCRA"). Having considered the matter, the Court finds that provision of the FCRA does not preempt Count II of the Complaint; thus, Defendant's Motion [Doc. 5] is **DENIED**.

I. BACKGROUND

Plaintiff Brenda Baker's ("Baker") well-pleaded allegations are as follows. In 2005, Baker's husband opened a Lowe's account, financed by GEMB, with an account number ending in 6055 ("6055 account"). At some point prior to August 2009, Baker was listed as an authorized user on the 6055 account. On August 8, 2009, Baker's husband filed for Chapter 7 bankruptcy. He discharged the 6055 account through bankruptcy on December 2, 2009.

In September 2009, Baker attempted to refinance her home loan, but was told that the GEMB

tradeline had adversely affected her credit score. As a result, she was unable to obtain the lowest possible interest rate. Shortly thereafter, GEMB began attempting to collect the overdue balance on the 6055 account from Baker and sent its dunning letter in her name.

After receiving the dunning letter, Baker contacted GEMB and attempted to explain that GEMB was trying to collect on the 6055 account from the incorrect account holder. She explained that her husband was the proper account holder, and that he had discharged the account through bankruptcy. She also requested any documentation proving that she bore any responsibility for paying the balance of the 6055 account.

In a letter to Baker, GEMB admitted that it was no longer in possession of the original application for the 6055 account. But in a later letter dated October 8, 2009, GEMB claimed that the 6055 account was an individual account in the name of Brenda Baker. Then, in a letter dated October 9, 2009, GEMB confirmed that it had made the necessary changes to Baker's account and reported the changes to the major credit reporting agencies. On November 3, 2009, GEMB sent two separate letters to Baker: one alleging that she was still behind on payments on the 6055 account and another requesting bankruptcy information. Although Baker responded with her husband's bankruptcy information, including a letter from his bankruptcy attorney, GEMB began to report past due amounts on the 6055 account to Baker's credit report.

Some time after these events, GEMB placed the 6055 account with Genpact Services, LLC ("Genpact"), a collection agency. On March 1, 2010, Genpact sent its first dunning letter to Baker. On March 17, 2010, Professional Bureau of Collections of Maryland, Inc. ("PBCM"), another collection agency, also sent Baker a dunning letter. After receiving the letters, Baker disputed the debt directly to PBCM.

On April 21, 2010, Baker wrote to Trans Union, Experian, and Equifax credit bureaus to

2

dispute the inaccurate information reported by GEMB, Genpact, and PBCM. She provided copies of the correspondence to GEMB.

On May 18, 2010, Baker received a letter from Home Depot Credit Services stating that her credit account had been closed due to derogatory information in her Equifax credit report.

On May 21, 2010, Lead Edge Recovery Solutions ("LERS"), another collection agency, sent Baker a dunning letter on the 6055 account. In response, Baker sent a dispute letter to LERS.

Between May 14 and May 28, Baker received responses from all three credit bureaus. The "Results of Reinvestigation" sent by each bureau showed that GEMB had failed to perform a reasonable investigation into Baker's dispute and had inaccurately verified that the 6055 account belonged to Baker, was charged off, and was reporting extremely delinquent.

On August 24, 2010, Baker filed her complaint against GEMB. Count I of the complaint alleges that GEMB violated various sections of the FCRA, 15 U.S.C. §§ 1681 et seq. Count II alleges that GEMB committed credit defamation.

## II. LEGAL STANDARD

On motion to dismiss, the Court must accept as true all well-pled facts in a plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). The complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. Id.

## III. DISCUSSION

GEMB's sole contention in its motion is that Count II must be dismissed because section 1681t(b)(1)(F) of the FCRA preempts all state law causes of action against furnishers of credit information.

The FCRA contains two preemption provisions. Prior to 1996, preemption of state law claims by the FCRA was governed only by section 1681h(e). Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). In 1996, Congress enacted the Consumer Credit Reporting Reform Act of 1996, which introduced another preemption provision to the FCRA. Relevant to this case, section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any State--
>     (1) with respect to any subject matter regulated under--
>     . . . .
>         (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specified provisions of the Massachusetts Annotated Laws or the California Civil Code].

15 U.S.C. § 1681t(b)(1)(F).

District courts' attempts to apply these two provisions to state law tort claims against entities that furnish information to consumer reporting agencies have spawned a variety of approaches. See generally Tracy Bateman Farrell, Annotation, *Preemption of State Law by Fair Credit Reporting Act*, 8 A.L.R. Fed. 2d 233 (2006 & cum. supp. 2010). In the district courts, three main approaches have developed. The "total preemption" approach holds that section 1681t(b)(1)(F) preempts all state law claims against furnishers of information to credit reporting agencies. See, e.g., Carruthers v. Am. Honda Fin. Corp., 717 F. Supp. 2d 1251 (N.D. Fla. 2010) (adopting "total preemption" approach). The "temporal" approach holds that state law claims against a furnisher of information that arise after the furnisher receives notice of a dispute are categorically barred by section 1681t(b)(1)(F), but preemption of state law claims arising before the furnisher receives notice of a

4

dispute are governed by section 1681h(e). See, e.g., Woltersdorf v. Pentagon Fed. Credit Union, 320 F. Supp. 2d 1222 (N.D. Ala. 2004) (adopting "temporal" approach). The "statutory" approach holds that section 1681t(b)(1)(F) applies to state statutory law claims, while section 1681h(e) applies to state common-law claims. See, e.g., Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368 (N.D. Ga. 2004) (adopting "statutory" approach). Given the lack of consensus on the matter, the Court will address the question anew and reference the three approaches and the decisions applying them as necessary.

Because Defendant argues that Count II is preempted by section 1681t(b)(1)(F), the Court begins its analysis with the plain language of that provision. It preempts any "requirement or prohibition . . . imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2." 15 U.S.C. § 1681t(b)(1)(F). The first question in this case is whether a state common-law tort action is a "requirement or prohibition . . . imposed under the laws of any State."

Defendant suggests that the Supreme Court's decision in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), provides a definitive answer to that question. In that case, the Supreme Court addressed whether several state common-law tort causes of action were preempted by the Public Health Cigarette Smoking Act of 1969, which provided: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Id. at 515 (internal quotation marks omitted). Although disagreeing on the application of the provision to the specific claims in question, a majority of the Court concluded that common-law actions fell within the ambit of the statute. Dealing first with the phrase "[n]o requirement or prohibition," the plurality concluded that the phrase "sweeps broadly and suggests no distinction

5

between positive enactments and common law." Id. at 521 (plurality opinion). Turning to the phrase "imposed under State law," the plurality noted that its decisions regularly construed references to state law "to include common law as well as statutes and regulations." Id. at 522. In a separate opinion, Justices Scalia and Thomas agreed with the plurality's treatment. Id. at 548-549 (Scalia, J., concurring in part and dissenting in part) (agreeing "that the language of the [1969] Act plainly reaches beyond [positive] enactments; that the general tort-law duties petitioner invokes against the cigarette companies can, as a general matter, impose 'requirement[s] or prohibition[s]' within the meaning of § 5(b) of the 1969 Act; and that the phrase 'State law' as used in that provision embraces state common law" (internal quotation marks and citations omitted)).

If applying the reasoning of Cipollone to the language of section 1681t(b) were the only consideration, then the question would probably not be as difficult as courts have found it. Congress's use of materially similar language only four years after the decision in Cipollone would normally be a strong indication that it intended to adopt the construction of that language as well. See Carruthers, 717 F. Supp. 2d at 1256. The meaning of the language, however, is not absolute. See Bates v. Dow Agrosciences LLC, 544 U.S. 431, 443 (2005) (noting that the term "requirements" in a preemption clause does not invariably embrace common-law duties). In this case, several other considerations related to the statutory language and scheme weigh against applying the Cipollone construction of a "requirement or prohibition . . . imposed under the laws of any State."

First, section 1681t(b) contains multiple uses of the term "State law" that demonstrate that Congress only intended to encompass positive enactments of State statutory law and not common-law tort claims. Throughout section 1681t(b), Congress inserted numerous exemptions from the statute's preemptive effect. Often, specific State statutes are exempted. See 15 U.S.C. § 1681t(b)(1)(F), (2), (3), (4). Other times, however, Congress exempted "any State law in effect" on

6

a certain date. See id. § 1681t(b)(1)(B), (E). Although other courts have made much of it, the Court will not read too much into the exemption of specific State statutes. While the presence of specific exemptions for statutes could indicate that Congress only intended section 1681t(b) to apply to State statutory law, an equally plausible explanation is that Congress simply chose not to exempt any common-law tort causes of action from the statute's preemptive reach. When Congress speaks of "State law in effect" on a certain date, however, it uses the term "State law" in a way that indicates a "State law," at least in this context, is the type of law that has an effective date. See Ori v. Fifth Third Bank, 674 F. Supp. 2d 1095, 1099 (E.D. Wis. 2009). Statutes and other positive enactments have dates on which they become effective, but it would be a highly unusual usage to speak of a common law duty or requirement as having a date on which it becomes effective.

In addition, the statute also uses the term "laws of any State" within one subsection in a way that points to statutory law. Subsection (b)(3)(C) provides that subsection (b)(3) "shall not be construed as limiting, annulling, affecting, or superseding any provision of the laws of any State regulating the use in an insurance activity, or regulating disclosures concerning such use, of a credit-based insurance score of a consumer by any person engaged in the business of insurance." 15 U.S.C. § 1681t(b)(3)(C). Again, we often describe statutes or regulations as containing different provisions, but rarely would we speak of common law duties in that way.

Second, applying the Cipollone construction to section 1681t(b) creates troublesome conflicts with section 1681h(e). As set forth above, section 1681h(e) prohibits any consumer from:

> bring[ing] any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information

7

furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (footnote omitted). In short, it preempts common-law torts based on disclosures required under several provisions of the FCRA unless the defendant reported the information with malice or willful intent to injure the consumer. Because of the inclusion of the final phrase regarding malice or willful intent, the provision does not totally preempt such claims; a plaintiff can still escape the preemptive effect by showing malice or willful intent. On the other hand, section 1681t(b) totally preempts whatever claims fall within its reach. It makes no exceptions for cases where the plaintiff might prove malice or willful intent. Thus, if section 1681t(b) reaches common-law claims, and if it applies to claims based on the same disclosures covered by section 1681h(e), then sections 1681t(b) and 1681h(e) would set different standards for preemption for the same claims based on the same disclosures. And indeed, sections 1681t(b) and 1681h(e) do cover claims based on disclosures required under the same provisions of the FCRA. Section 1681h(e) preempts claims based on disclosures required under sections 1681g, 1681h, and 1681m. Section 1681t(b) preempts claims based on subject matter regulated under both sections 1681g and 1681m. See 15 U.S.C. § 1681t(b)(1)(C), (D), (G), (I), (3), (5). If section 1681t(b) applies to common-law torts, then it effectively repeals the exception from preemption for cases of malice or willful intent to injure provided by section 1681h(e), at least to the extent of that overlap.[1] See Branch v. Smith, 538 U.S. 254, 273 (2003) (noting that "repeals by implication are not favored" (plurality opinion) (internal quotation marks omitted)).

---

[1] The Court further notes that when Congress enacted the preemption provisions found section 1681t(b) in 1996, it also amended portions of section 1681h, including augmenting the scope of section 1681h(e). That action strengthens the argument against a repeal by implication because it belies the argument that any conflict between the provisions of section 1681t(b) and section 1681h(e) was simply a product of Congress's inattention to the older section 1681h(e).

Other courts have attempted to dodge this consideration in cases like this one that are brought against furnishers of information. They reason that there is no need to consider any possible conflict between sections 1681t(b) and 1681h(e) in such a case. Their reasoning proceeds in several steps. First, section 1681t(b)(1)(F) clearly preempts all claims against furnishers of information based on duties regulated on section 1681s-2. Second, section 1681h(e) only applies to claims against credit reporting agencies or users of information by way of sections 1681g, 1681h, and 1681m, and the clause directed to "a user of a consumer report to of for a consumer against whom the user has taken adverse action." In the absence of an allegation that the furnisher of information was a user of information that took adverse action against the consumer, section 1681h(e) would not apply to the case. Thus, no conflict is raised; section 1681t(b)(1)(F) preempts the claim brought against the furnisher of information with regard to duties imposed by section 1681s-2, while section 1681h(e) has nothing to say on the matter. See Knudsen v. Wachovia Bank, 513 F. Supp. 2d 1255, 1259-60 (M.D. Ala. 2007); see also Sigler v. RBC Bank (USA), 712 F. Supp. 2d 1265 (M.D. Ala. 2010).

Certainly that reasoning provides a clean and simple solution to this particular situation, but it does so at the expense of ignoring the implications of that reasoning for the entirety of section 1681t(b). In assuming that section 1681t(b)(1)(F) applies to common-law causes of action, those courts necessarily assume that a common law cause of action is a "requirement or prohibition . . . imposed under the laws of any State" in the context of section 1681t(b). Although that assumption may not lead to any conflict with section 1681h(e) in this situation applying section (b)(1)(F), as set forth above, it necessarily leads to conflicts between other provisions of section 1681t(b) and section 1681h(e). The phrase "requirement or prohibition . . . imposed under the laws of any State" applies to all of section 1681t(b), not just section 1681t(b)(1)(F). Thus, in determining its meaning, the

9

Court finds it appropriate to consider any conflicts between any subsections of 1681t(b) and section 1681h(e) that inhere in a given construction.

In the ordinary course of events, Congress's decision to use language that was materially similar to the language construed in <u>Cipollone</u> would evince an intent also to adopt the construction of the language from that case. In this case, however, other uses of the terms "State law" and "under the laws of any State" indicate that Congress only intended to capture State statutory law, as opposed to common-law causes of action, within the preemptive sweep of section 1681t(b). The conflict that would result between provisions of section 1681t(b) and section 1681h(e) if section 1681t(b) were interpreted to cover common-law tort causes of action further reinforces that section 1681t(b) does not apply to common-law causes of action. Thus, the Court now holds, in accordance with other courts adopting the statutory approach, that section 1681t(b) does not apply to common-law tort causes of action. Accordingly, section 1681t(b)(1)(F) does not preempt Plaintiff's defamation claim found in Count II.[2] Defendant's Motion to Dismiss is **DENIED**.

SO ORDERED this 6th day of May, 2011.

> S/ C. Ashley Royal
> C. ASHLEY ROYAL, JUDGE
> UNITED STATES DISTRICT COURT

bcw

---

[2] Defendant does not argue that Count II is preempted by section 1681h(e) or any other provision of the FCRA.